**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-02755-WJM-KMT

JONATHAN REYES,

      Plaintiff,

v.

SNOWCAP CREAMERY, INC.,
EMILY ARNOLD, and
ROBERT ARNOLD,

      Defendants.

---

## ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT

---

In this civil action, Plaintiff Jonathan Reyes ("Plaintiff") brings claims under the Fair Labor Standards Act ("FLSA") against his former employer Defendant Snowcap Creamery, Inc. and its owners Robert and Emily Arnold (collectively "Defendants"). (ECF No. 1.)  The primary issue in this case is whether Plaintiff, who was employed as a "kitchen manager", was properly classified as an exempt employee for purposes of the overtime provisions in the FLSA.  (*Id*. at 1.)

Before the Court are the parties' cross-motions for summary judgment ("Motions").  (ECF Nos. 50 & 59.)  For the reasons set forth below, the Motions are denied.

## I.  LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTUAL BACKGROUND

A brief recitation of the facts necessary to resolve the instant Motions is set forth below.

Defendant Snowcap Creamery, Inc. ("Snowcap") is a small restaurant in Erie, Colorado owned and operated by Defendants Robert and Emily Arnold.  (Emily Arnold Dep. (ECF No. 53-15) p. 68.)  Plaintiff Jonathan Reyes was employed by Snowcap from August 2009 until September 17, 2011.  (ECF No. 6 ¶ 37.)  He was originally hired as a line cook and was paid $10.00 per hour.  (Reyes Decl. (ECF No. 52) ¶ 4.)

In late 2009, Plaintiff accepted Defendants' offer to become Snowcap's Kitchen Manager, with a salary of $1,100.00 every two weeks.  (Bob Arnold Decl. (ECF No. 50-

1) ¶ 1.)  Plaintiff frequently worked more than forty hours a week and more than twelve hours per day.  (Answer ¶¶ 47 & 51.)  Defendants did not pay him any additional wages for the overtime he worked.  (*Id*. ¶ 56.)

To the extent more detailed facts about Plaintiff's work environment are necessary for the Court's analysis, they will be set forth in greater detail below.  Briefly, Plaintiff was generally regarded as Emily Arnold's "right hand man" in the kitchen.  (ECF No. 50-12.)  He had some responsibility for recruiting and training new kitchen employees, scheduling employees in the kitchen, ordering food and supplies, and creating new menu items.  (Reyes Dep. (ECF No. 50-4) pp. 54-61, 70-71, 84-85.)

On June 3, 2011, Plaintiff and Snowcap entered into an "Employment Agreement" which stated that Snowcap would pay for Plaintiff's service fees, attorneys' fees, and other expenses incurred "in pursuit of his U.S. immigration documentation, including and up to U.S. naturalization."  (ECF No. 6-1.)  Under the terms of this agreement, Plaintiff was to repay 50% of these costs through monetary reimbursement or non-paid work hours.  (*Id*.)  In the event Plaintiff's employment ceased, Plaintiff was required to pay back 100% of the money expended by Snowcap.  (*Id*.)

Plaintiff's last day of employment with Defendants was September 17, 2011.  (Reyes Decl. (ECF No. 52) ¶ 9.)  Plaintiff has not been paid for the final five days that he worked.  (*Id*.)  On September 28, 2011, Plaintiff sent a text message to Robert Arnold asking for payment of his final wages and providing the address to which payment could be sent.  (ECF No. 52-1.)

# III.  ANALYSIS

On the facts set forth above, Plaintiff brings the following claims: (1) violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b); (2) violation of the Colorado Minimum Wage Order, 7 Colo. Code Regs. 1103-1:4; and (3) violation of the Colorado Wage Act, Colo. Rev. Stat. § 8-4-101 *et seq*.  (ECF No. 1.)  Additionally, Defendants bring a counter-claim for unpaid money under the Employment Agreement. (ECF No. 6.)

Each party moves for judgment in its favor on all claims.  (ECF Nos. 50 & 51.) The Court will address each claim in turn below.

## A.    Fair Labor Standards Act Claim

Under the FLSA, the general rule is that any employee who works more than forty hours in a workweek must receive overtime compensation.  *See* 29 U.S.C. § 207(a)(1).  Employers need not pay overtime, however, if the employee is "employed in a *bona fide* executive, administrative, or professional capacity" as defined by the regulations promulgated by the Secretary of Labor.  *See* 29 U.S.C. § 213(a)(1). Employees who fall within the "executive, administrative or professional" regulations are commonly referred to as "exempt" employees.

The employee bears the burden of proving that the employer is violating the FLSA.  *Archuleta v. Wal-Mart Stores, Inc.*, 543 F.3d 1226, 1233 (10th Cir. 2008). However, an employer who asserts that the employee is exempt because he falls within the executive, administrative, or professional exceptions bears the burden of establishing that such category applies.  *Id*.  The exceptions to FLSA's overtime

4

requirement are construed strictly against the employer.  *Id*.

In this case, Defendants allege that Plaintiff was exempt from the overtime requirements because he was an "executive" at Snowcap.[1]  (ECF No. 50 at 22-23.) Under the Department of Labor regulations, an employee qualifies for the executive exemption if the employee:  (1) is paid a salary not less than $455.00 per week; (2) has a primary duty of management of the enterprise or a customarily recognized department or subdivision thereof; (3) customarily and regularly directs the work of two or more other employees; and (4) has "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees are given particular weight."  29 C.F.R. § 541.100(a).  As the employer, Defendants bear the burden of showing that each of these prongs has been satisfied.  Because, as set forth below, the Court finds that there are significant factual disputes as to at least three of these prongs, summary judgment is not appropriate.

1.    Primary Duty is Management

The parties dispute whether Plaintiff's primary duty was management of the enterprise or a subdivision thereof.  Defendants argue that Plaintiff was the kitchen

---

[1]  Plaintiff moves for summary judgment on Defendants' assertion that the executive exemption applies and argues that Defendants failed to properly plead this affirmative defense. (ECF No. 51 at 20-21.)  While the Court agrees that the assertion of this affirmative defense in the Defendants' Answer is weak, Plaintiff should have raised this argument earlier in the litigation through a Motion to Strike or some other vehicle.  Were the Court to grant Plaintiff's Motion at this point, the remedy would be to simply allow Defendants the opportunity to file an amended Answer.  At this stage of the litigation, such action is unnecessary as the Final Pretrial Order contains Defendants' detailed assertion of the executive exemption, and supplants the pleadings for the remainder of this case.  (*See* ECF No. 64 at 10.)  Accordingly, Plaintiff's Motion for Summary Judgment is denied to the extent it seeks judgment on the executive exemption affirmative defense based on waiver.

manager and, as such, his primary duty was managing the kitchen and its employees. (ECF No. 50 at 27-32.)  Plaintiff contends that he was a cook and his primary duty was simply those activities associated with a cook in a small restaurant.  (ECF No. 51 at 23-25.)

The FLSA regulations include the following illustrative list of management activities:

> interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purposes of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials for merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures.

29 C.F.R. § 541.102.  An employee's "primary duty" is management if it is the "principal, main, major or most important duty that the employee performs."  *See* 29 C.F.R. 541.700(a).  To determine whether an employee's primary duty is management, the Court may look at the following non-exclusive factors:  (1) the amount of time spent performing non-managerial tasks, (2) the relative importance of non-managerial duties as compared to other duties, (3) the employee's relative freedom from direct supervision, and (4) the relationship between the employee's salary and the wages paid to other employees performing nonexempt work.  *Id*.

Having reviewed the evidence, the Court finds that there is a genuine dispute of fact as to whether Plaintiff's primary duty was management.  For example, on the one hand, there is evidence showing that Plaintiff was the primary contact for hiring and training new employees in the kitchen.  (Reyes Dep. at 78-79, 126.)  He played a role in planning labor costs and determining when more employees were needed in the kitchen.  (*Id*. at 95-96.)  Plaintiff was involved with selecting and ordering supplies for the kitchen.  (*Id*. at 70-71.)  All of these are activities that would fall within "management" according to the regulations cited above.

On the other hand, Plaintiff has presented evidence showing that whatever managerial activities he assisted with took only a small fraction of his days.  (Emily Arnold Dep. at 69-70.)  Plaintiff has shown that he spent the majority of his time performing the duties of a line cook with no managerial responsibilities.  (Holloway Dep. at 12-13.)  Though satisfying this prong of the analysis is their burden, Defendants have failed to provide any analysis showing the amount of time that Plaintiff spent on managerial activities.  While the time spent on management activities is not dispositive, it is an important factor which must be considered on a case-by-case basis.  *See* 29 C.F.R. § 541.106(a), 541.700(b).

Given the disparate facts in the record, the Court finds that there is a genuine dispute of fact as to whether Plaintiff's primary duty was management.

2.    Customarily and Regularly Directs the Work of Two or More Employees

The regulations require that an exempt executive employee regularly direct the work of two full-time employees or their equivalent.  *See* 29 C.F.R. § 541.104(a) ("To qualify as an exempt executive under § 541.100, the employee must customarily and

regularly direct the work of two or more other employees.  The phrase 'two or more other employees' means two full-time employees or their equivalent.  One full-time and two half-time employees, for example, are equivalent to two full-time employees.  Four half-time employees are also equivalent.").

The Court finds that there is a genuine dispute of fact as to whether Plaintiff regularly and customarily supervised the work of the equivalent of two full-time employees.  At various points in the case, Defendants have taken the position that Plaintiff supervised anywhere from thirteen to thirty-two employees during his tenure as kitchen manager.  (ECF No. 59 at 15.)  Depending on which evidence the Court finds credible, it could easily conclude in favor of either party.  Given the disparate evidence on this point in the record, the Court has little difficulty finding that this issue merits a trial.

Additionally, there are significant factual disputes regarding the nature of Plaintiff's supervision of these employees.  This is inter-related with the discussion above about whether and to what extent Plaintiff's duties were "managerial".  Plaintiff has presented evidence that he was simply a senior cook and did not "supervise" many of his co-workers.   Defendants have presented evidence showing that Plaintiff directed the work of other employees, which would suggest that he was supervising them.  Having reviewed the evidence in the record, the Court finds that reasonable minds could disagree as to whether Plaintiff regularly and customarily supervised certain of his co-workers.  As such, summary disposition in favor of either party is inappropriate.

3.    Influence over Personnel Decisions

With respect to the fourth criterium, whether an employer gives "particular

weight" to an employee's recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees depends on "whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon." 29 C.F.R. § 541.105. In general, "an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs." *Id*. An employee's recommendations "may still be deemed to have 'particular weight' even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decisions as to the employee's change in status." *Id*.

The Court finds a genuine dispute of fact as to whether Plaintiff's opinions were given "particular weight" with regard to personnel decisions. Defendants have presented evidence showing that Plaintiff was an integral part of the hiring and disciplinary process for kitchen employees. (Reyes Dep. at 84-87.) However, Plaintiff has presented evidence showing that he provided only minimal input on personnel decisions, was not consulted at all on some personnel decisions, and that such decisions were made exclusively by the Arnolds. (ECF No. 54-15 at 79-80.) Thus, reasonable minds could disagree as to whether Defendants gave particular weight to Plaintiff's opinion in personnel matters and, as such, summary adjudication is inappropriate.

In sum, given the significant factual disputes with respect to whether Defendants have met their burden of showing that Plaintiff was an "executive" employee, the Court

9

denies both Parties' Motions for Summary Judgment on the FLSA claim.

4.  <u>Willfulness</u>

Under the FLSA, an employee is generally entitled to recover unpaid past wages going back two years.  *See* 29 U.S.C. § 255.  However, if an employer's violation of the FLSA was "willful", an employee can recover for three years of wages.  *Id*.  "The standard for willful violations is whether the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA].'"  *See Reich v. Monfort, Inc.*, 144 F.3d 1329, 1334 (10th Cir. 1998).

Plaintiff moves for summary judgment on his claim that he is entitled to three years of unpaid wages because Defendants' FLSA violation was willful.  (ECF No. 51 at 25.)  However, the Court has already held that the significant factual disputes with regard to Plaintiff's job duties, his supervision of other employees, and his role in personnel decisions means that a trial is necessary to decide if Plaintiff was an exempt employee.  If, after hearing all of the evidence at trial, the Court finds that Plaintiff was exempt, then Defendants' failure to pay overtime was not a violation of the FLSA, and Plaintiff's claim for a willful violation would necessarily fail.  Therefore, the issue of whether any violation of the FLSA was willful cannot be decided at this stage of the litigation.  *See Linn v. Developmental Servs. of Tulsa, Inc.*, 891 F. Supp. 574, 580 (N.D. Okla. 1995) (the jury must decide willfulness where there is a dispute of fact as to whether an employee is exempt).

Accordingly, Plaintiff's Motion for Summary Judgment is denied as to whether Defendants' FLSA violation was willful.

5.   Liquidated Damages

Plaintiff also asks the Court to determine, as a matter of law, that he is entitled to liquidated damages.  (ECF No. 51 at 31.)

Under the FLSA, an employer that violates 29 U.S.C. § 207 is typically liable for liquidated damages in an amount equal to the amount of unpaid overtime compensation.  *See* 29 U.S.C. § 216(b); *Dep't of Labor v. City of Sapulpa*, 30 F.3d 1285, 1289 (10th Cir. 1994).  However, if the employer can prove that (1) the violation occurred in good faith and (2) it had "reasonable grounds for believing that its act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."  29 U.S.C. § 260; *Doty v. Elias*, 733 F.2d 720, 725-26 (10th Cir. 1984).  The employer must establish both prongs of § 260 to avoid or reduce an award of liquidated damages.  *See Sapulpa*, 30 F.3d at 1289 ("Thus, the district court may eliminate or reduce the award of liquidated damages only if the employer demonstrates both that he acted in good faith and that he had reasonable grounds for believing that his actions did not violate the [FLSA].") (quotations omitted).  Even if an employer can satisfy the two prongs of § 260, a court still has discretion to award some or all of the liquidated damages.  *See id.*

Whether an employee is entitled to liquidated damages is a question for the Court to decide after the issues of whether there has been an FLSA violation and whether such violation was willful have been decided.  *See Brinkman v. Dep't of Corr.*, 21 F.3d 370, 372-73 (10th Cir. 1994).  Because the Court has held that trial is necessary to determine both of these issues, the Court cannot resolve the liquidated

11

damages issue at this point.  Accordingly, Plaintiff's Motion for Summary Judgment is denied to the extent it seeks pre-trial resolution of liquidated damages.

**B.**     **Colorado Minimum Wage Order**

Plaintiff also brings a claim under the Colorado Minimum Wage Order ("CMWO"), which "regulates wages, hours, working conditions and procedures for certain employers and employees for work performed within the boundaries of the state of Colorado."  7 Colo. Code Regs. 1103-1:1.  The CMWO requires that an employee be paid time and one-half for all hours worked over forty in a week or twelve in a day.  *Id*. at 1103-1:4.  Like the FLSA, the CMWO exempts employees that are employed in an "executive or supervisor" capacity.  *Id*. at 1103-1:5.  To qualify as an "executive or supervisor", an employee must: (1) earn in excess of the equivalent of the minimum wage for all hours worked in a workweek; (2) supervise the work of at least two full-time employees; (3) have the authority to hire and fire, or to "effectively recommend" such action; and (4) spend a minimum of 50% of the workweek in duties directly related to supervision.  *Id*.

Given the similarity between the FLSA's "executive" exemption and the "executive or supervisor" exemption under the CMWO, the Court need not rehash its prior analysis to conclude that there are significant disputes of material fact with respect to whether Plaintiff qualifies as an "executive or supervisor".  Accordingly, the Court finds that this question must be resolved by a trial and the parties' cross Motions for Summary Judgment on this claim are denied.

C.     **Colorado Wage Act**

Plaintiff brings a claim for unpaid wages under the Colorado Wage Act ("CWA"), which requires that an employer pay all wages or compensation for work already performed immediately upon discharge.  Colo. Rev. Stat. § 8-4-109(1)(a).  Plaintiff alleges that Defendants failed to pay him any wages for his last five days of work.  (ECF No. 51 at 32.)

Defendants first argue that Plaintiff waived or abandoned this claim by failing to include it in the Scheduling Order.  (ECF No. 50 at 35.)  Defendants cite no authority supporting this argument, and the Court is not compelled to find that the failure to explicitly reference a particular statute in the Scheduling Order constitutes waiver of such claim.  Plaintiff's claim under the CWA was plainly set forth in the Complaint and is also included in the Final Pretrial Order, which supplants the pleadings.  (ECF Nos. 1 & 64.)  As such, the Court finds that Plaintiff has not abandoned his CWA claim.

Defendants next argue that summary judgment is appropriate because Plaintiff failed to make a written demand for payment after he quit his employment.  (ECF No. 50 at 35.)  The CWA requires that, when an employer refuses to pay wages, an employee must "make a written demand for payment within sixty days after the date of separation and shall state in the demand where such payment can be received."  Colo. Rev. Stat. § 8-4-109(3)(a).

The evidence shows that Plaintiff sent a text message to Defendants in which he asked for his payment and provided an address where Defendants could send his final check.  (ECF No. 1 at 9.)  Defendants contend that a text message does not suffice as "written demand for payment".  (ECF No. 50 at 35-36.)  Defendants also contend that

13

an employee must demand a particular amount of payment.  (*Id*.)  However, the only authority cited by Defendants for these arguments is an article from the Colorado Lawyer magazine.  This is plainly insufficient to meet their burden of showing that they are entitled to judgment as a matter of law.

The Court finds that neither Party has met its burden of showing that it is entitled to summary judgment on Plaintiff's CWA claim.  As such, the cross-Motions for Summary Judgment are denied as to this claim.

**D.     Defendants' Counter-Claim**

Defendants bring a counter-claim against Plaintiff based on an Employment Agreement executed between the parties.  (ECF No. 6 at 6-7.)  The Parties have both moved for summary judgment on this claim.  (ECF Nos. 50 at 36; 51 at 34-36.)

Plaintiff's Motion for Summary Judgment argues that summary judgment in his favor is appropriate on the counter-claim because the Colorado law governing covenants not to compete prohibits contracts such as the Employment Agreement. (ECF No. 51 at 34 (citing Colo. Rev. Stat. § 8-2-113(2)(c)).)  Defendants contend that the Employment Agreement does not restrict Plaintiff's right to compete or to leave his job for another employer and, therefore, the law cited by Plaintiff does not apply.  (ECF No. 54 at 56-57.)  The Court agrees with Defendants.  Nothing in the Employment Agreement restricts Plaintiff's ability to gain employment with a competitor or to compete with Defendants' business.  As such, the law governing covenants not to compete is inapplicable.

Plaintiff also argues that the Employment Agreement was not breached because the repayment provisions were triggered only if Plaintiff quit his employment, and

14

Plaintiff was terminated rather than voluntarily resigning his position.  (ECF No. 51 at 35-36.)  The Court finds that the plain language of the Employment Agreement does not support this argument.  (ECF No. 6-1.)  Rather, the Employment Agreement provides that Plaintiff will repay the costs incurred by Defendants for immigration service fees, attorneys' fees, and direct expenses regardless of whether he was terminated or whether there was an "'at will' severance of employment."  (*Id*.)  Thus, the Court finds that whether Plaintiff quit or was terminated is irrelevant to whether he was obligated to repay the money.

As these are the only two arguments raised by Plaintiff in support of his request for summary judgment on Defendants' Counter-Claim, the Court finds that Plaintiff has failed to meet his burden of showing that he is entitled to judgment as a matter of law on this claim.

Defendants' Motion for Summary Judgment devotes four sentences to its Counter-Claim.  (ECF No. 50 at 36.)  The only factual citation is to the Complaint and there are no legal citations.  (*Id*.)  Defendants utterly fail to address any of the elements of a breach of contract claim or provide any analysis as to why they are entitled to summary judgment on this claim.  (*Id*.)  Given Defendants' cursory treatment of this issue, the Court declines to devote any additional time to this aspect of the Motion and, therefore, it is denied.  *See United States v. Almaraz*, 306 F.3d 1031, 1041 (10th Cir. 2002) (holding that a party's "perfunctory and cursory reference" to an issue "without citation to authority in support of a legal argument is inadequate to warrant consideration.").

Accordingly, the Parties' cross-Motions for Summary Judgment are denied with

respect to Defendants' counter-claim.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendants' Motion for Summary Judgment (ECF No. 50) is DENIED;

2.      Plaintiff's Motion for Summary Judgment (ECF No. 51) is DENIED; and

3.      This case remains set for a three-day bench trial beginning November 25, 2013.


Dated this 14th day of August, 2013.

BY THE COURT:

William J. Martinez
United States District Judge