**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 11-cv-02755-JLK-KMT

JONATHAN REYES,

     Plaintiff,

v.

SNOWCAP CREAMERY, INC., EMILY ARNOLD, and ROBERT ARNOLD,

     Defendants.

---

## ORDER ON MOTION FOR ATTORNEY FEES AND COSTS

Kane, J.

On December 20, 2013, Mr. Reyes received a limited bench verdict on his Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203 *et seq*.; Colorado Minimum Wage Order, 7 Colo. Code Regs. 1103-1:4; and Colorado Wage Act, C.R.S. § 8-4-101 *et seq*. claims. Doc. 101. Before me is Mr. Reyes's Motion for an Award of Attorney Fees and Costs. Mr. Reyes seeks attorney fees totaling $129,953.35, an amount representing the sum of Mr. Reyes's billed fees less a 10% reduction in acknowledgment of the limited nature of Mr. Reyes's success. He also requests $1,901.09 in costs.

### I.    Background

#### A.  The Parties' Claims and Counterclaim

Mr. Reyes's brought three claims as follows:

*Claim One*: Snowcap violated the FLSA by failing to pay him overtime premium wages for the roughly twenty-five months of his employment[1].

---

[1] Specifically, Mr. Reyes contended that the non-payment of overtime occurred sporadically from August 2009 until the beginning of November 2009, during which time his title was line cook, and then consistently after his title

1

*Claim Two*: Snowcap violated the Colorado Minimum Wage order by failing to pay him overtime premium wages for the roughly twenty-five months of his employment.

*Claim Three*: Snowcap violated the Colorado Wage act by failing to pay him any wages for his final week of work.

Had Mr. Reyes prevailed on all claims for all months he worked for Snowcap, his unpaid wage damages would have been $63,342.75.  Adding to this figure various liquidated and penalty damages and believing his federal and state remedies to be cumulative, Mr. Reyes estimated his total damages as $182,583.59.

Snowcap pursued a counterclaim for $5,503 to recover amounts it paid to fund Mr. Reyes's efforts in securing a work visa.

### B.  Verdict and Rulings

Concerning the FLSA claim, I found that Mr. Reyes was a non-exempt employee during the period from August 25, 2009 through January 23, 2010 and is entitled to overtime pay of $1475.19, plus liquidated damages in the amount of $1475.19. Regarding the Colorado Wage Act claim, I found that Mr. Reyes is entitled to $392.86 from Snowcap, representing a pro-rated portion of his salary for his last five days of employment from September 13-17, 2011. Additionally, I ruled that Snowcap could not recover on its counterclaim because federal law prohibits the reimbursement of an employer's visa-related expenses.

---

changed to "Kitchen Manager" in later November 2009. Based on the testimony at trial, I determined that Mr. Reyes did not attain Kitchen Manager status in November 2009, but rather on January 24, 2010, and that, as discussed herein, Mr. Reyes was not entitled to overtime in his role as Kitchen Manager.

While ruling in favor of Mr. Reyes as specified above, I denied all damages claimed for overtime from January 24, 2010 to the end of his employment, a span of approximately twenty months, finding that Mr. Reyes was an exempt manager/supervisor during that period. Further, in a post-trial ruling, I held that while Mr. Reyes succeeded in proving violations of both the FLSA and the Colorado Minimum Wage Order statutes, he could not recover damages under both statutes. Doc.108. Consequentially, Mr. Reyes was awarded $3343.24 of his $182,583.59 in claimed total damages. Doc. 112.

   C.  Mr. Reyes's Detailing of Counsel's Work and Independent Assessments Thereof

To avoid repetition, I incorporate by reference the sworn Declaration of Scott Moss, Esq., Mr. Reyes's lead counsel, which (A) details the hourly rates, experience, and litigation roles of each attorney (Moss Decl. ¶¶ 1-2); (B) attaches, and adds the totals from, all records of attorney fees (hours, descriptions, and rates) and costs (expenses and disbursements) (*id*. ¶ 3); (C) explains how counsel paid various costs and sought no fees from Mr. Reyes (*id*. ¶ 4); and (D) details key aspects of counsel's efforts and billing that show the reasonableness of the time expended (*id*. ¶ 5).

The Moss Declaration attaches 46 pages of exhibits: counsel's fee and cost records (pp. M-1 to M-37), plus sworn testimony from uncompensated and unassociated professionals on the reasonableness of counsel's billing. The testimony is from two attorneys with complementary expertise areas: (1) attorney Robert Truhlar, Esq., who has experience not only litigating in this District, but also in evaluating attorney rates (pp. M-38 - M-44); and (2) attorney and clinical law professor Raja Raghunath, Esq., who has experience not only litigating in this District, but also in teaching the litigation of public

interest cases, including FLSA and labor contract breach claims to unpaid wages – so he assesses counsel's *hours* (pp. M-45 - M-46).

While I generally accept the content of the Moss Declaration and its attendant billing records, the latter does contain a several hundred dollar error.  Among the two Weinberger Law Offices attorneys, it was Mr. Myers, not Mr. Weinberger, who spent 2.9 hours at Defendant Emily Arnold's deposition. The Emily Arnold deposition in evidence at trial shows that Mr. Myers (not Mr. Weinberger) took that June 4, 2012, deposition; billing record page M-14 shows Mr. Myers (not Mr. Weinberger) prepared for Ms. Arnold's deposition on June 3, 2012; yet page M-14 incorrectly shows Mr. Weinberger (not Mr. Myers) as the taker of that deposition (Def. Resp. at 11).   Because those 2.9 hours for Ms. Arnold's deposition should have been billed by Mr. Myers at his $156 hourly rate (for a total of $452.40), rather than by Mr. Weinberger at his $322 hourly rate (for a total of $933.80), the fees for taking that deposition should have been $481.40 lower.  The fee figure quoted above has taken this error into calculation.

Snowcap agrees with the reasonableness of the hourly rates as described in the Moss Declaration.

## II.     Analysis

Where plaintiffs prevail on a claim under the FLSA, "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's[sic] fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b).  The statutory purpose of this fee provision is "to insure effective access to the

judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co., Inc.,* 732 F.2d 495, 502 (6th Cir.1984). In other words, the fee provision is about the access for a plaintiff, not the largesse of an attorney.[2]

In reaching an award of attorney fees, I first calculate the "lodestar" figure, which is determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).  When a plaintiff achieves "excellent results," his attorney should recovery full compensatory fees. *Id.* However, when a plaintiff achieves only partial success, the lodestar figure may be excessive. *Id.* at 436.

The first step in calculating the lodestar amount is to determine the number of hours reasonably spent by counsel for the party seeking the fees. *See Case v. Unified School Dist. No. 233, Johnson County, Kan.,* 157 F.3d 1243, 1249 (10th Cir.1998). The party applying for attorney fees bears the burden of showing that the hours asserted are reasonable. *See Blum v. Stenson,* 465 U.S. 886, 897 (1984). "'[T]he district court need not identify and justify every hour allowed or disallowed, as doing so would run counter to the Supreme Court's warning that a 'request for attorney's[sic] fees should not result in a second major litigation.'" *Malloy v. Monahan*, 73 F.3d 1012, 1017-18 (10th Cir. 1996)(quoting *Hensley*, 461 U.S. at 437.).The number of hours is then multiplied by a reasonable rate. In

---

[2] It is for this reason that I believe the fee provision should have been punctuated as "attorney fees," rather than "attorney's fees."  The possessive apostrophe in the statute lends the false impression that the fees inherently belong to the attorney.  This is a misconception that produces bad law.  The fees belong to the litigant so that he may in turn find counsel more affordable.  The term "attorney" in this context is an adjective.

determining a rate of compensation, the court should determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time. *See Ramos v. Lamm,* 713 F.2d 546, 559 (10th Cir.1983). A fee award does not have to be proportional to a damage award. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). "The degree of success a plaintiff enjoys is '[a] critical factor' in determining the amount of fees to be awarded." *Dalal v. Alliant Techsystems, Inc.*, 927 F.Supp. 1374, 1381 (D.Colo. 1996)(citing Hensley, 461 U.S. at 436). "[T]he 'partial success' inquiry examines the degree of interrelationship between the successful claim(s) and the unsuccessful ones. If the unsuccessful claims 'involve a common core of facts' or are based 'on related legal theories' to the successful claims, any reduction made for partial success should be minimal." *Rodriguez v. Wet Ink, LLC*, No. 08-cv-00857-MSK-CBS, 2014 WL 287339, *7 (D. Colo. Jan. 27, 2014) (quoting *Hensley,* 461 U.S. at 435).

Arguing that the hourly rates and amount of time spent on the case are reasonable and true to the billing records submitted, Mr. Reyes contends that the lodestar arrived at by multiplying those two sums should be awarded less a 10% reduction. Mr. Reyes deems a 10% reduction appropriate to account for the unsuccessful portion of the overtime claims. Snowcap contests both the reasonableness of the amount of time Mr. Reyes's counsel expended on the case and the 10% reduction. Specifically, Snowcap argues that the time is not reasonable because the billing records lack specificity and include entries that are related to Mr. Reyes's unsuccessful exemption argument and/or are duplicative and that a reduction of more than 10% is necessary because Mr. Reyes's lost the key issue of whether he was exempt in his role as Kitchen Manager, a title he

held for twenty of the twenty-five months of overtime claimed. Snowcap's arguments concerning the reasonableness of the amount of time are not persuasive. Snowcap's basic objection to a 10% reduction is well-received, but its suggested solution is unfitting. I consider Snowcap's positions in turn, addressing the unpersuasive arguments concerning the reasonableness of time first.

Snowcap draws an inaccurate conclusion of duplicate work in claiming that two attorneys splitting work on a major task shows that more than one attorney billed for a single service or item of work. Snowcap sets forth two primary examples of alleged duplicate work. The first is that both Marianna Moss and Mr. Myers billed for their preparation and attendance at the deposition of Bob Arnold. There is nothing inherently unreasonable about two attorneys billing for the deposition of a party. Mr. Arnold was not only a defendant in this case but also a key witness at trial.

Snowcap's second example, and the more significant of the two, is that Mr. Moss's "entries include six for 'research and drafting SJ motion,' five for 'work on SJ opp,' and four for 'work on SJ reply.' Mr. Myers also has numerous entries relating to the summary judgment briefs. It is not possible to determine the specific work performed by Mr. Moss and whether it is reasonable to award attorney fees for summary judgment work for both Mr. Moss and Mr. Myers." (Def. Resp. at 10-11; citations omitted.) It is reasonable for two lawyers to split the work on summary judgment research and briefing, especially given the voluminous briefing that included Snowcap filing both a 58-page brief (Doc. 54) and a 37-page brief (Doc. 50). It is unreasonable to demand that billing records include the sort of detail necessary to distinguish the summary judgment work of

two co-counsel; indeed, the only way to show Mr. Moss and Mr. Myers did different work would be for them to list, in each several-hour billing record, every fact evidence item and each caselaw citation they researched – which is not what attorney billing practice and caselaw require.  While the descriptions of the time expended are certainly not prolix, they are sufficiently descriptive to qualify as reasonable.

As far as Snowcap contends that the hours spent litigating the exemption issue are unreasonable, that argument speaks to the lodestar reduction, not the lodestar calculation in the first instance.  The reasonable hours component of the lodestar reckoning is "the number of hours reasonably expended on *the litigation*," *Hensley*, 461 U.S. at 433 (emphasis added), not the number of hours expended on successful claims.  It is *after* arriving at the lodestar amount that a court must determine whether an upward or downward adjustment is appropriate by considering the degree of success achieved by the prevailing party.  *Hensley*, 461 U.S. at 434.

Snowcap's opposition to the proposed 10% reduction, on the other hand, is sound. Mr. Reyes suggests that only a modest reduction in the lodestar amount is appropriate "because the unsuccessful portion of the overtime claims entailed only modest additional time." Mr. Reyes claims that Snowcap "repeatedly declared" that he was exempt throughout his employ (Moss Decl. ¶5(a)) – compelling Mr. Reyes to present duties evidence and analyze exemption law even for the successful summer/fall 2009 to January 2010 five-month period. This is a misrepresentation.

Snowcap did not claim that Mr. Reyes was exempt during his entire employment. Instead, Snowcap's position, which I ultimately accepted at trial, was that Mr. Reyes was

exempt during the time that he was Kitchen Manager.  After Mr. Reyes's motion for summary judgment argued that he was owed overtime as an hourly line cook, Snowcap fought that claim not by arguing exemption, but by contending that he should be foreclosed from making that claim.  Snowcap never denied that the time records showed Mr. Reyes worked more than 40 hours per week during some of the weeks before his promotion to Kitchen Manager.

I ultimately found that the transition from hourly line cook to Kitchen Manager was effective January 24, 2010, rather than early November 2009. This does not mean, however, that Mr. Reyes's counsel was required to gather and analyze the facts and law with respect to exempt status to prove that Mr. Reyes did not have managerial duties as an hourly line cook. As noted, Snowcap never claimed that Mr. Reyes was exempt in that position.

Beyond cavil the most significant question in this litigation was whether Mr. Reyes's titular position of Kitchen Manager was a sham.  If it was, as Mr. Reyes argued, Mr. Reyes would have been entitled to overtime for the entire period of his employment. Instead, as Snowcap argued, I found that Mr. Reyes was truly functioning as a Kitchen Manager for Snowcap and accordingly that Mr. Reyes was an exempt executive/manager who was not entitled to overtime when he was a Kitchen Manager.  Because I found that the Kitchen Manager position was genuine, it was precisely Snowcap's argument that was successful. I did go on to find that Mr. Reyes was entitled to a modest amount of overtime for hours he worked as an hourly line cook, but this finding had and has nothing to do with the exemption issue.

Contrary to Mr. Reyes's motion, there was no "common core" of facts and law with respect to the unsuccessful FLSA claim (overtime as Kitchen Manager) and the successful FLSA claim (overtime as hourly line cook).  The resolution of the former was based entirely on the highly-disputed defense of exemption. The determination of the latter had nothing to do with that defense and instead was based on undisputed time records and on limited evidence relating to the timing of Mr. Reyes's promotion. There can be no question that the exemption defense was the "key issue" in the litigation and that Mr. Reyes did not prevail on that question.  To be sure, there is a modicum of interplay between the law and facts surrounding Mr. Reye's unsuccessful FLSA claim as a Kitchen Manager and his successful FLSA claim as an hourly line cook, at least insofar as the effective date of Mr. Reyes's appointment to Kitchen Manager had to be determined, but this frail connection does not make the claims share a "common core." Where a plaintiff has achieved only limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount, "even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." *Hensley*, 461 U.S. at 436.

Snowcap submits that because Mr. Reyes "did not assert a claim for overtime as an hourly line cook until his January 11, 2013 motion for summary judgment, no fees or costs should be awarded for work or expenses through that date." (Def. Resp. at 31). This request is inapt because it is premised on an argument it lost twice before (on summary judgment and at trial) in incorrectly claiming that the summary judgment

motion was the first time that Mr. Reyes claimed overtime for employment before January 24, 2010.

All the same, there is no doubt some reduction in fees is proper and I think the percentage I assign to the task should far exceed 10%. Based on the foregoing analysis of the appropriate hourly rate and the number of hours expended, my gross lodestar calculation is an award of $144,446.1. Because counsel's billing records do not clearly indicate what time was spent on the unsuccessful exemption argument versus other litigation tasks, the best evidence available to me on this question is my own perception of the case at the trial. *See Roldan v. Pure Air Solutions, Inc.*, 2010 WL 410571, 2010 U.S. Dist. LEXIS 12779, *1 (S.D. Fla. Jan. 29, 2010)(calculating lodestar reduction based on the emphases at trial).

As I have indicated throughout, the vast majority of the time taken up during the trial was related to the exemption issue. The time records that formed the basis of Mr. Reyes's recovery as an hourly employee were admitted at trial by stipulation. Snowcap further conceded that Mr. Reyes was not paid for his last workweek—that was part of the counterclaim fact pattern. From the quick work of this stipulation and concession, it is readily apparent that this case was driven by the exemption issue. Accordingly, I find that Mr. Reyes's proposed reduction does not adequately take into account the limited level of success achieved. I wish to make painstakingly clear that it is because of the limited success Mr. Reyes achieved that I am reducing the lodestar, not because Mr. Reyes was awarded much less in damages than he sought. As stated above, a fee award does not have to be proportional to a damage award. "Because Congress wants even

small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." *Anderson v. AB Painting & Sandblasting, Inc*., 578 F.3d 542, 545 (7th Cir. 2009).

Although I hope to have made it abundantly clear that Mr. Reyes only nominally won this lawsuit, I do wish Snowcap to incur a reasonable financial penalty, in accord with the FLSA, to reinforce that there are consequences for employers who violate the law.[3] I exercise my discretion to reduce the lodestar by 75%, a reduction that better represents the full value of legal work required to plead and prove Mr. Reyes's overtime due as an hourly line cook and his claim that he had not been paid for his last workweek. A 75% reduction of the gross lodestar results in a final fee award of $36,111.53.

Finally, Mr. Reyes seeks per the FLSA and Fed.R.Civ.P. 54(d)(1) to recover costs in the amount of $1,901.09. Based on the absence of any objection as to any particular cost and not finding any *sua sponte*, I find that Mr. Reyes should be awarded the full amount of costs requested.

### III.   Conclusion

For the foregoing reasons, Mr. Reyes is awarded $36,111.53 in attorney fees and $1,901.09 in costs.

---

[3] And Snowcap flagrantly violated law; its employee handbook specifically told employees: "There is no overtime pay as there is no shortage for qualified labor. Any hours worked beyond 40 are paid straight time and is understood by the employee that the extra hours are a privilege." (Myers Decl. Ex. E, Snowcap's Employee Relations Manual.)

DATED:      June 2, 2014                    BY THE COURT:

_**s/John L. Kane**_
John L. Kane, U.S. Senior District Judge